UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No. 1:25-01313

JESIKA BRODISKI, individually and
on behalf of all others similarly situated,

    Plaintiff,

vs.

IBOTTA, INC.,

    Defendant.

---

## CLASS ACTION COMPLAINT

---

Plaintiff, individually and on behalf of all others similarly situated, alleges the following:

### I.    INTRODUCTION

1. Ibotta owns and controls a widely used browser extension that is free for online shoppers to download, and Ibotta promotes its browser extension as a tool that automatically finds coupon codes, compares prices, and offers cash-back rebates (the "Browser Extension").

2. Ibotta's promise to identify instant savings moments before checkout makes it especially attractive to consumers who have already chosen products and placed them in their online shopping carts.

3. Founded in 2011, Ibotta integrated the Browser Extension into its cash-back platform in 2020 after raising more than half a billion dollars in venture financing, positioning the add-on as a seamless companion to its popular mobile-rebate app.

- 1 -

4. Ibotta represents that millions of U.S. shoppers use the Browser Extension, and public data from the Chrome Web Store alone shows more than 300,000 installations, with additional users on Firefox, Edge, and Safari.

5. Like other affiliate intermediaries, Ibotta earns a percentage of each sale completed after its referral identifier is applied—a fee structure that retailers have historically accepted as a performance-based alternative to traditional advertising.

6. Online marketers—including YouTubers, bloggers, podcasters, and other social-media influencers—direct their audiences to products and services and earn commissions when purchases are made through tracked affiliate links.

7. Retailers administer these arrangements through affiliate-marketing programs that rely on unique tracking tags and cookies to determine which marketer is credited for each sale.

8. Under such programs, an online marketer receives a dedicated hyperlink; when a follower clicks that link, the marketer's cookie is planted in the shopper's browser and attributes any qualifying purchase made during the cookie window—typically 14 – 30 days—to the marketer.

9. Recent technical analyses, however, reveal that Ibotta's Browser Extension cheats content creators out of the commissions to which they are entitled during the checkout process.

10. As detailed throughout this Complaint, Ibotta programmed the Extension to systematically appropriate commissions belonging to influencers like Plaintiff and the Class by substituting its own affiliate identifier for the marketer's cookie—even when the customer arrived through the marketer's unique link.

11. Plaintiff and the proposed Class are online marketers whose commission payments Ibotta has misappropriated. They bring this action on behalf of themselves and all others similarly situated to recover damages and to enjoin Ibotta's wrongful conduct going forward.

## II.   JURISDICTION

12. This Court has subject-matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), because (a) at least one member of the proposed Class is a citizen of a state different from Ibotta; (b) the proposed Class contains more than 100 members nationwide; and (c) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

13. This Court has personal jurisdiction over Ibotta because it maintains its principal place of business in Denver, Colorado, regularly conducts business within this State, and has purposefully availed itself of the privileges and protections of Colorado law.

## III.   VENUE AND DIVISIONAL ASSIGNMENT

14. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because a substantial number of the events or omissions giving rise to the claims arose in Denver, CO, where iBotta is headquartered and conducts business.

## IV.   PARTIES

### A.   Plaintiff

15. Jesika Brodiski is a resident of Renton, Washington.

### B.   Defendant

16. **Ibotta USA, Inc.** (d/b/a "iBotta") is a corporation organized under the laws of Delaware with its principal executive offices at 1081 California Street, Suite 400, Denver, Colorado 80202. Ibotta owns and operates the "Ibotta" cash-back platform and the Browser

Extension at issue and conducts substantial business throughout the United States from its Colorado headquarters. Unless otherwise indicated, the term "Ibotta" in this Complaint encompasses the company's Browser Extension, affiliated entities, and agents.

## V. RELEVANT FACTS

### A. Background

#### 1. The iBotta Browser Extension

17. iBotta entices users to download the iBotta browser extension by promising to search the internet for coupons that can be applied to items that are already in the user's online shopping cart.

18. The iBotta browser extension works via near-instantaneous web scraping to search for and test coupon codes that may be applicable to the relevant purchase.

#### 2. Online Marketers and the Commission System

19. With the rise of social media and increasing popularity of platforms like YouTube, several retailers have turned to online marketers (including YouTubers and influencers) to market their products to consumers.

20. Online marketers make commissions by directing their followers to affiliate links.

21. Affiliate links are web-based hyperlinks that direct consumers to a website where they can purchase the product or service being promoted by an influencer.

22. Online vendors use tracking tags to determine whether a consumer landed on the webpage for their product or service and made a purchase after clicking an affiliate link. Vendors can then attribute the sale to the influencer responsible for the affiliate link and provide a commission.

### 3. iBotta's Misappropriation of Online Marketer Commissions

23. Unbeknownst to Plaintiff and other online marketers, iBotta has been using the iBotta browser extension to manipulate the user's network transmissions to allow iBotta to surreptitiously take credit for sales commissions it did not earn.

24. iBotta displaces tracking tags that point to influencers as the source of the referral, substitutes its own tracking tags, and holds itself out as the referrer of the specific products and/or services even though the sale in question emanated from a content creator's affiliate marketing link.

25. Analysis of network traffic on websites where the iBotta extension was running reveals electronic transmissions and communications between a user's browser, the website, and other third parties. Network traffic is typically invisible to ordinary website users.

26. The network traffic demonstrates that, when an online shopper has downloaded the iBotta browser extension, it silently and invisibly removes affiliate cookies and tracking tags that would otherwise credit the rightful salesperson—the influencer—with the sale of that particular product or service.

27. For example, one investigation demonstrated what happens when an online shopper watches a YouTube video and wants to purchase the product(s) and/or service(s) that a specific influencer is promoting.

28. The user in question scrolls down to the video description, identifies the link to the specific product they want to purchase, and clicks on the link. At this point, they are redirected to the merchant website to complete the purchase.

29. If the user decides to complete the purchase, whether the influencer will be credited with the referral and receive a commission depends upon whether the online shopper in question has activated the iBotta browser extension.

30.     The image below is a screenshot of a section of the network traffic prior to activating the iBotta browser extension. At this point, the "utm_campaign" parameter correctly uses a code that is associated with the YouTube tech reviewer "You Just Bought A," and the "utm_source" parameter correctly identifies that the user was referred to the checkout page via

[screenshot of browser developer tools showing Request URL with utm_campaign=yjba_switchlite_20221205 and utm_source=youtube parameters highlighted, Request Method: GET, Status Code: 200 OK, Remote Address: 172.64.146.207:443, Referrer Policy: strict-origin-when-cross-origin]

YouTube. In this scenario, the influencer gets credit for the referral and may receive a commission.

31.     However, as demonstrated in the image below, once the iBotta extension is activated, the "utm_campaign" parameter—which would otherwise credit "You Just Bought A" with the sale and affiliate commission—is overwritten and displaced. As illustrated below, the value of the "utm_source" parameter that identified YouTube as the source of the referral disappears, and a "utm_content" parameter appears identifying iBotta. In this scenario, iBotta gets credit for the referral and ultimate purchase of the product even though it did not help the online shopper identify the product, nor did it necessarily provide the online shopper with any additional

[screenshot of Request URL showing utm_campaign=7412276, utm_medium=aff, utm_source=Dcj, utm_content=7412276_ibotta%252C%2BInc., utm_term=12699043 parameters highlighted]

discount for the product.

### B.   iBotta's Exploitation of Last-Click Attribution and Affiliate Marketing Links.

32. When an online shopper clicks on a content creator's affiliate link, a tracking tag is generated, which becomes part of the URL and allows the online retailer to know who to credit with the referral and commission for the sale.

33. The tracking tag is saved on the online shopper's browser in the form of a cookie that will expire in thirty days. This ensures that, even if it takes a few days for the online shopper to complete their purchase, the content creator will still get credit for the sale.

34. When it comes to online referral commissions from affiliate marketing links, the industry standard used for crediting sales is "last click attribution," which means the last click determines who gets credit for a sale.

35. Consider a customer that clicks on a blogger's affiliate link to a particular product but never purchases the product. A few weeks pass, and the customer sees a different content creator's video promoting the same product. The customer clicks on the YouTuber's affiliate link for the product and completes their checkout.

36. In this scenario, last click attribution gives the YouTuber credit for the sale, not the blogger. This happens because, when the customer clicks on the YouTuber's affiliate link and opens the new checkout tab, the YouTuber's affiliate cookie displaces the blogger's affiliate cookie.

37. The iBotta browser extension is purposely designed to exploit the last-click attribution process, and it achieves this by producing pop-ups that simulate referral clicks.

38. For example, if the online shopper clicks the "Earn" button during the checkout, the iBotta browser extension will discretely remove the content creator's affiliate cookie and replace it with iBotta's own affiliate cookie.

39. iBotta thus steals credit for sales and pockets commission money it did not earn. Accordingly, iBotta's goal is to entice online shoppers to activate the iBotta Extension, and it aims to achieve this even when iBotta has not identified any relevant coupons based on the products in the online shopper's cart.

C. **Activation of the iBotta Extension**

40. As described below, iBotta entices online shoppers to activate their browser extension in several different ways, each of which displaces the rightful referrer and claims commission credit for sales iBotta did not influence, much less generate.

41. **Scenario 1:** An online shopper clicks a content creator's marketing affiliate link and adds a product or service to their shopping cart. As the customer proceeds through the checkout process, the iBotta browser extension creates a pop-up box alerting the user that it has identified an opportunity to earn cash back, thereby enticing the user to click the "Earn" button shown in the image below.



Upon clicking the "Earn 0.5% back" button, shown in the image above, iBotta claims credit for the sale by removing the influencer's affiliate cookies, and seamlessly and invisibly inserting its own affiliate cookies.

42. **Scenario 2:** The same online shopper described in Scenario 1 is completing their checkout, but iBotta has not identified a cash-back opportunity associated with the purchase. iBotta still produces a pop-up to entice the user to click on one of iBotta's buttons, but this time iBotta simply alerts the user that there are no coupons to apply to the shopping cart. iBotta uses several different types of pop-ups, some of which state "You already have the best price."

43. This entices the user to click on the "Ok" button or "Continue to Checkout" button—depending on which pop-up has populated—in order to clear the screen and complete their purchase. Alternatively, the user may be presented with a button that allows them to try more coupon codes.

44. Once again, if the user clicks any of these buttons, it will create a simulated referral click that removes the influencer's affiliate cookies and invisibly credits iBotta with the referral and ultimate commission on the sale.

D. **Plaintiff's Experience**

45. **Jesika Brodiski** is a content creator that earns commission payments from affiliate marketing links she shares on her social media channel (@onceuponaminivan).

46. Ms. Brodiski has received commission payments from products purchased via her affiliate marketing links. However, she would have earned more income in the form of commission payments from her affiliate marketing links but for iBotta's scheme to usurp commissions through the iBotta browser extension.

47. iBotta stole credit for sales and conversions that Ms. Brodiski originated via her own platforms, emanating from the affiliate marketing links she shared on those platforms.

E.  **Damages & Harm**

48. Plaintiff and Class Members were harmed by iBotta's conduct because the iBotta's browser extension systematically steals commission payments from their rightful owners—i.e. the individual who promoted and shared the affiliate link and generated the referral and ultimate sale of a product or service.

49. Plaintiff Brodiski promotes products via her social media channels and hosted affiliate marketing links to those products. She had several marketing affiliate links with Walmart.com, and her referral tag was set as an "AID" cookie, which corresponds to a specific referral program and specific referrer.

50. When one of Ms. Brodiski's followers clicked on her affiliate marketing links and added products to their online shopping cart, her AID cookie attached and attributed the referral and sale of the product to Ms. Brodiski, thereby crediting her with the sale and corresponding commission payment.

51. However, through the same process as depicted in paragraphs 30-32 *supra*, Ms. Brodiski's referral links are overwritten by iBotta's affiliate links when a user click's iBotta's links, thereby depriving Ms. Brodiski of her rightfully earned commission.

VI.  **CLASS ALLEGATIONS**

52. Plaintiff, on behalf of herself and as a class action under the Federal Rules of Civil Procedure, Rule 23(a), (b)(1), (b)(2), (b)(3), and (c)(4), seek damages and injunctive relief on behalf of the members of the following Class (the "Class"):

> All persons in the United States who, during the Class Period, earned income by participating in affiliate commission programs from a United States eCommerce merchant.

53. Excluded from the Class are the Defendants and their officers, directors, management, employees, subsidiaries, or affiliates. Also excluded are the district judge or

magistrate judge to whom this case is assigned, as well as those judges' immediate family members, judicial officers and their personnel, and all governmental entities.

54. **Numerosity:** Members of the Class are so numerous that joinder is impracticable. There are at least tens of thousands of members of the Class, geographically dispersed throughout the United States, such that joinder of all Class members is impracticable.

55. **Typicality:** Plaintiff's claims are typical of the claims of the other Class members. The factual and legal bases of Defendants' liability are the same and resulted in injury to Plaintiff and all other members of the Class.

56. **Adequate representation:** Plaintiff will represent and protect the interests of the Class both fairly and adequately. She has retained counsel competent and experienced in complex class-action litigation. Plaintiff has no interests that are antagonistic to those of the Class, and their interests do not conflict with the interests of the Class members they seek to represent.

57. **Commonality and Predominance:** Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class members because Defendants have acted on grounds generally applicable to the Class and because Class members share a common injury. Thus, determining damages with respect to the Class as a whole is appropriate. The common applicability of the relevant facts to claims of Plaintiff and the proposed Class are inherent in Defendants' wrongful conduct because the injuries incurred by Plaintiff and each member of the Class arose from the same conduct alleged herein.

58. There are common questions of law and fact specific to the Class that predominate over any questions affecting individual members, including:

    a. Whether Defendants programmed and designed the iBotta browser extension in a manner that wrongfully credits iBotta as the originator of sales referrals;

b. Whether the scheme described herein results in iBotta being awarded commission payments it did not rightfully earn;

c. Whether iBotta was unjustly enriched to the detriment of Plaintiff in the form of commission payments;

d. Whether consumers and Class members have been damaged by Defendants' conduct; and

e. The nature and scope of appropriate injunctive relief.

59. **Superiority:** Class proceedings on these facts are superior to all other available methods for the fair and efficient adjudication of this controversy, given that joinder of all members is impracticable. Even if members of the Class could sustain individual litigation, that course would not be preferable to a class action because individual litigation would increase the delay and expense to the parties due to the complex factual and legal controversies present in this matter. Here, the class action device will present far fewer management difficulties, and it will provide the benefit of a single adjudication, economies of scale, and comprehensive supervision by this Court. Further, uniformity of decisions will be ensured.

60. Class certification is also appropriate under Rules 23(b)(1), (b)(2), and/or (c)(4) because:

- The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendants;

- The prosecution of separate actions by individual Class Members would create a risk of adjudications that would, as a practical matter, be dispositive of the

- interests of other Class Members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests;

- Defendants have acted or refused to act on grounds generally applicable to the Class, making injunctive and corresponding declaratory relief appropriate with respect to the Class as a whole; and

- The claims of Class Members are comprised of common issues whose resolution in a class trial would materially advance this litigation.

## TOLLING OF THE STATUTES OF LIMITATIONS

61. All applicable statute(s) of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiff and Class Members could not have reasonably discovered Defendants' practice of surreptitiously manipulating network transmissions to allow iBotta to take credit for sales commissions it did not earn.

62. Defendants were and remain under a continuing duty to disclose to Plaintiff and Class Members their practice of displacing tracking tags that point to influencers as the source of a referral and substituting their own tracking tags to appropriate commissions that belong to influencers like Plaintiff and Class members. As a result of the active concealment by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VII. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### UNJUST ENRICHMENT

63. Plaintiff incorporates the above allegations by reference as if fully set forth herein and brings this claim individually and on behalf of the Class.

64. Plaintiff lacks an adequate remedy at law.

65. Plaintiff and Class members have an interest, both equitable and legal, in the referral fees and commission payments to which they were wrongfully deprived. These payments were rightfully earned by Plaintiff and Class members, not iBotta.

66. iBotta benefitted from the referral fees and commission payments that were credited to it as a function of the iBotta browser extension wrongfully claiming credit for commissions via last-click attribution.

67. iBotta understood that it so benefitted, and it also understood and appreciated that the iBotta browser extension would cause the harm described herein.

68. But for iBotta's unjust and improper use of their browser extension, it would not have been credited and awarded commission on sales that emanated from Plaintiff's and Class Members' respective affiliate marketing links.

69. As a result of iBotta's wrongful conduct as alleged in this Complaint, iBotta has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class members.

70. iBotta continues to benefit and profit from the iBotta browser extension while Plaintiff and Class members continue to have their rightful commission payments diverted to iBotta.

71. iBotta's unjust enrichment is traceable to, and resulted directly and proximately from the conduct alleged herein, including by using the iBotta browser extension to wrongfully credit itself with referrals and commissions it did not rightfully earn.

72. The benefit conferred upon, received, and enjoyed by iBotta was not conferred officiously or gratuitously, and it would be inequitable and unjust for iBotta to retain the benefit.

73. Equity and good conscience militate against permitting iBotta to retain the profits and benefits from its wrongful conduct, which should be restored to Plaintiff and Class members.

## SECOND CAUSE OF ACTION
## INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

74. Plaintiff incorporates the above allegations by reference as if fully set forth herein and brings this claim individually and on behalf of the Class.

75. Plaintiff and Class members are engaged in an economic relationship with eCommerce merchants by referring their followers to those merchants through affiliate links. In return, eCommerce merchants provide Plaintiff and Class members with referral fees or commissions. These relationships are ongoing, and Plaintiff and Class members expect to continue earning commissions in exchange for referrals.

76. iBotta is aware of the referral and commission relationship between Plaintiff and Class members on the one hand and eCommerce merchants on the other hand.

77. Through use of the iBotta browser extension, iBotta steals commission payments from Plaintiff and Class members who promoted and shared an affiliate link and generated the referral and ultimate sale of an eCommerce merchant's product or service. Specifically, iBotta displaces tracking tags that point to influencers as the source of the referral, substitutes its own tracking tags, and holds itself out as the referrer of the specific products and/or services even though the sale in question emanated from a content creator's affiliate marketing link.

78. iBotta either intended to usurp commissions from Plaintiff and Class members through the conduct alleged herein or knew that its conduct would appropriate commissions and referral fees.

79. Plaintiff and Class members were harmed by iBotta's conduct because the iBotta browser extension deprives Plaintiff and Class members of monies they rightfully earned as the true originators of sales arising from their affiliate marketing links.

80. iBotta's conduct was a substantial factor in causing harm to Plaintiff and Class Members in that, among other things, they suffered economic injury by being deprived of commissions they should have earned from referrals through their affiliate links.

81. As a result of the above conduct, iBotta is liable to Plaintiff and Class members for damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### CONVERSION

82. Plaintiff incorporates the above allegations by reference as if fully set forth herein and brings this claim individually and on behalf of the Class.

83. Plaintiff and Class members possessed or had a right to possess commissions they earned from referring consumers to products and services sold by eCommerce merchants. The amount of each commissions constituted a specific and identifiable sum.

84. iBotta intentionally and substantially interfered with Plaintiff's and Class members' personal property by usurping commissions and referral fees owed to Plaintiff and Class members.

85. iBotta, without proper authorization, assumed and exercised the right of ownership over these commissions, in hostility to the rights of Plaintiff and Class members, without justification.

86. iBotta's wrongful exercise of control over Plaintiff's and Class members' personal property constitutes conversion.

87. Plaintiff and Class members neither assented to nor ratified iBotta's interference with their commissions.

88. As a direct and proximate result of iBotta's conversion, Plaintiff and Class members were harmed.

89. iBotta is liable to Plaintiff and Class members for damages and costs permitted by law.

## JURY DEMAND

90. Plaintiff demands a trial by jury on all issues so triable.

DATED: April 25, 2025

Respectfully submitted,

*/s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

David S. Almeida*
**ALMEIDA LAW GROUP LLC**
849 W. Webster Ave.
Chicago, Illinois 60614
Tel.: (708) 437-6476
david@almeidalawgroup.com

**Pro Hac Vice application forthcoming*

*Attorneys for Plaintiff & the Putative Classes*